HONORABLE RONALD B. LEIGHTON

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

UNITED STATES OF AMERICA,

Plaintiff,

v.

DAVID CAIN,

Defendant.

CASE NO. CR03-5114RBL

ORDER

THIS MATTER is before the Court on Defendant's Motion for Compassionate Release Pursuant to 18 U.S.C. § 3582(c)(1)(A).  The Court has reviewed the materials filed for and against the motion.  Oral argument is not necessary.  The Motion is **DENIED** for the following reasons.

**I. FACTS**

**A.  Cain's Conviction, Sentence and Criminal History.**

David Cain was prosecuted for his role in two separate armed robberies of the Viking Community Bank in Fife. The first robbery took place on November 7, 2001. On that date Cain and a codefendant approached the teller counter when the last customer left the bank. PSR ¶ 11. Cain's codefendant pointed a firearm at the teller and announced their intention to

rob the bank. PSR ¶ 12. Cain went behind the counter to collect the cash in a bag and attempted to remove any bail money containing die packs. PSR ¶ 12. The two then fled the scene in a van driven by an accomplice. PSR ¶ 15.

Slightly more than one month later, Cain robbed the same bank again, this time alone. PSR ¶ 17. He entered the bank, pulled out a small pistol and directed everyone in the bank to get to the ground. PSR ¶ 17. At that point, he walked behind the counter and directed the teller to open the cash drawer. PSR ¶ 19. He grabbed cash from the drawer tossing the bundle of cash with the die pack to the ground. PSR ¶ 19. Cain then asked the teller to open the drawer of an adjacent teller station and when the teller explained she did not have the key, he placed the pistol to the back of her head and yelled that someone had to have the key. PSR ¶¶ 20-21. Thereafter, Cain struck the teller in the head with the pistol causing the pistol to discharge, mercifully without hitting anyone. PSR ¶ 21. He then fled the bank. PSR ¶ 21.

Cain was charged for these crimes about a year later. Specifically, Cain was charged with two counts of armed bank robbery in violation of 18 U.S.C. § 2113(a) and (d), and one count of discharging a firearm during a crime of violence in violation of 18 U.S.C. § 924(c). In the interim between his crimes and the federal indictment, Cain was prosecuted in King County for a series of armed convenience store robberies. For these offenses, Cain was sentenced to serve a 252 month prison sentence. PSR ¶¶ 64-65. By that point, Cain had already amassed prior Kansas convictions for burglary, battery, and criminal possession of a firearm, an offense involving his theft and possession of six firearms. PSR ¶¶ 55-63.

Cain pleaded guilty to the armed bank robbery and 924(c) charges pursuant to the terms of a plea agreement with the United States. At sentencing, the court granted a motion for a downward departure from the then mandatory sentencing Guidelines range and

sentenced Cain to a total sentence of 120 months of imprisonment. That sentence was imposed consecutive to the 252-month sentence imposed in King County cause number 02-1-00265-8.  As a result of that prior sentence, Cain did not begin serving his federal sentence until August 2019. He is currently housed USP Leavenworth with a projected release date of January 25, 2028.

**B. Cain's Medical Conditions.**

Cain is now 41 years old. He claims that he is at heightened risk for serious illness from coronavirus disease 2019 (COVID-19) because he is "overweight/obese, has hypertension and hyperlipidemia."  He also claims that he has been diagnosed with an irregular heartbeat.  A review of his medical records are at best contradictory regarding whether he suffers from any medical conditions.

As noted above, Cain did not begin his federal sentence until August 2019. The BOP report regarding his medical history and physical dated August 22, 2019 and August 26, 2019 reflects that Cain denied a history of hypertension and his blood pressure taken at that time was not elevated.  Indeed, there are no medications or medical problems identified in that report. The same was true for a BOP health screen performed on January 22, 2020.

The medical records do establish that Cain was seen on June 5, 2020 for what he described as chest pain, at that time he claimed he suffered from hypertension and a heart murmur.  At that point he was started on blood pressure medication.  There was no other reference to any sort of heart condition and he is not listed as obese.

The medical records from the Washington State Department of Corrections does contain a document labeled "problem list screening and immunization record" that does contain a reference to hyperlipidemia without explanation.  There is also a laboratory result

from January 2017 and January 2018, suggesting that Cain has high cholesterol.  Regarding

hypertension, a report from medical visits on January 11, 2019 and February 12, 2019,

indicate that Cain reported that he has not been on blood pressure medication for over eight

years and his blood pressure appeared normal.  With this record, he now suggests he has

presented an extraordinary and compelling reason for a reduction in his sentence in light of

COVID-19.

## II. ARGUMENT

**A.  The Legal Standards for Compassionate Release**

"'[A] judgment of conviction that includes [a sentence of imprisonment] constitutes a

final judgment' and may not be modified by a district court except in limited circumstances."

*Dillon v. United States*, 560 U.S. 817, 825 (2010). Consistent with that principle, Section

3582(c) provides that a court "may not modify a term of imprisonment once it has been

imposed," with three exceptions, one of which is a motion under 18 U.S.C. § 3582(c)(1)(A).[1]

This statute provides a court with jurisdiction to reduce an otherwise final sentence where a

defendant establishes: (1) the exhaustion requirements in the statute have been satisfied; (2)

an extraordinary and compelling reason supports the motion; and (3) any reduction is

consistent with the policy statement.

Congress directed the Sentencing Commission to draft the policy statement

referenced in the statute in 28 U.S.C. § 994(t). That policy statement, found at USSG §

1B1.13, repeats the requirements contained in the statute, then directs that to reduce an

otherwise final sentence, a court must find (1) that the defendant has presented an

extraordinary and compelling reason for the reduction, (2) that the defendant does not present

a danger to others and the community, and (3) that the reduction be appropriate after considering the factors in 18 U.S.C. § 3553(a).

The application notes then describe what situations circumstances may constitute extraordinary and compelling reasons. These include:

(A)    Medical Condition of the Defendant.—

(i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

(ii) The defendant is—

(I) suffering from a serious physical or medical condition,

(II) suffering from a serious functional or cognitive impairment, or

(III) experiencing deteriorating physical or mental health because of the aging process,

that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

(B) Age of the Defendant.--The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less

USSG § 1B1.13 cmt. n.1. Certain family circumstances, or other reasons as determined by the Director of the Bureau of Prisons[2] may also constitute extraordinary and compelling reasons. USSG § 1B1.13 cmt. n.1. The notes then acknowledge that "[t]he court is in a unique position to determine whether the circumstances warrant a reduction (and, if so, the amount of reduction), after considering the factors set forth in 18 U.S.C. § 3553(a) and the criteria set forth in this policy statement, such as the defendant's medical condition, the

defendant's family circumstances, and whether the defendant is a danger to the safety of any other person or to the community." USSG § 1B1.13 cmt. n.4.

The policy statement referenced in § 3582(c)(1)(A), like that in 18 U.S.C. § 3582(c)(2), controls how this Court is to exercise of discretion. *Cf. Dillon v. United States*, 560 U.S. 817, 827 (2010). In *Dillon*, the Court held that the identical "policy statement" language contained in 18 U.S.C. § 3582(c)(2) was binding on a district court's exercise of discretion. *See Dillon*, 560 U.S. at 826. Because both subsections follow the same prefatory language of § 3582(c) and are parallel in nature, the policy statement in § 3582(c)(1)(A) is also binding.

The First Step Act amendment, permitting a defendant to file such a motion and removing the Director of the Bureau of Prisons as the gatekeeper, did not change the statutory standards for relief, or direct the Sentencing Commission to change or expand this policy statement. Therefore, the fact that USSG § 1B1.13 has not been amended after enactment of the First Step Act does not change its binding nature. *See United States v. Ebbers*, 432 F.Supp.3d 421, 427 (S.D.N.Y. Jan. 8, 2020). Moreover, even if it is considered binding, at a minimum, the policy statement provides guidance on what constitutes an extraordinary and compelling reason to disturb the finality of a sentence. *See, e.g., United States v. Wolfe*, 2020 WL 2615010 (S.D. In. May 22, 2020).

Therefore, applying the statutory requirements, if the defendant has met the exhaustion requirements, before this Court may reduce the defendant's sentence, it first must determine whether the defendant has provided are an "extraordinary and compelling" reason consistent with the guidance provided in the application notes to the policy statement. If such a reason or reasons have been provided, this Court must then consider whether a reduction is

appropriate in light of the factors in 18 U.S.C. § 3553(a) and any danger that the defendant might continue to present to another person or the community.  Cain has not met this standard.

**B.  Cain Has Not Met the Standard for a Reduction on Sentence**

   **1.  *The Exhaustion Requirement***

   Cain filed a request for compassionate release with the warden on May 18, 2020, followed by a second request of May 23, 2020.  Thirty days have now passed since that request was filed so he has met his burden of satisfying this first condition.

   2.  ***Cain Does Not Have Medical Condition that Constitute an "Extraordinary and Compelling Reason"***

   After satisfying the exhaustion requirement, to be eligible for a district court's discretionary consideration of a reduced sentence under this provision, a defendant bears the burden to show "extraordinary and compelling reasons" that meet the high bar set by Congress and the Sentencing Commission for compassionate release to be granted. *See Riley v. United States*, No. C19-1522 JLR, 2020 WL 1819838 at *7 (W.D. Wash. Apr. 10, 2020). "In general, chronic conditions that can be managed in prison are not a sufficient basis for compassionate release." *United States v. Ayon-Nunez*, 2020 WL 704785, at *2–3 (E.D. Cal. Feb. 12, 2020). Rather, "compassionate release . . . is an extraordinary and rare event." *United States v. Mangarella*, 2020 WL 1291835, at *2–3 (W.D.N.C. Mar. 16, 2020). This reluctance to view compassionate release too expansively is grounded in a concern that it could yield significant sentencing disparities. *Ebbers*, 432 F.Supp.3d at 430. Compassionate release is not a tool to "correct" a judgment. *Id.*

   As noted above, Cain's motion is based on his claim that he is overweight (or obese), and that he suffers from hyperlipidemia and hypertension. He argues that this places him at risk of

1   severe illness should he contract COVID-19 and that he cannot protect himself in the

2   institutional environment. But these claims simply do not rise to the level of an extraordinary and

3   compelling reasons.

4           As an initial matter, as the defense acknowledges, based on the weight reflected in the

5   most recent medical records, Cain's Body Mass Index is 27.9. The defense then speculates that

6   he likely gained weight since the start of the COVID-19 pandemic. No doubt that speculation

7   is because the Centers for Disease Control and Prevention (CDC) only finds that those who

8   are obese – that is with a Body Mass Index of 30 or greater – to be at increased risk of severe

9   illness, not simply those who might be considered to be overweight.  Speculation, however,

10  is not evidence. Thus, Cain's weight is not a basis for his motion.

11          Similarly, hyperlipidemia and hypertension are not conditions that the CDC

12  recognizes as risk factors even assuming that Cain suffers from these conditions. Rather, as

13  of July 30, 2020, the CDC simply notes that hypertension is a factor that "might" place a

14  person at increased risk of severe illness. The CDC makes no mention of hyperlipidemia.

15  While this may be a risk factor for coronary artery disease, there is nothing to suggest that

16  Cain has this, or any other, heart condition.

17          Therefore, Cain's motion is essentially a claim that he may become infected with

18  COVID-19 while at the institution to justify release. While concerns about contracting

19  COVID-19 are certainly understandable, "[g]eneral concerns about possible exposure to

20  COVID-19 do not meet the criteria for extraordinary and compelling reasons for a reduction

21  in sentence set forth in the Sentencing Commission's policy statement on compassionate

22  release, U.S.S.G. §1B1.13." *United States v. Eberhart*, _ F.Supp.3d _, 2020 WL 1450745 at

23  *2 (N.D. Cal. 2020). As courts have noted, the latter claim would apply to everyone in

24

confinement and does not constitute extraordinary and compelling reasons. *See, e.g., United States v. Stanard,* 2020 WL 2219478 (W.D. Wa. May 7, 2020); *United States v. Espinal*, 2020 WL 2092484 (E.D. N.Y. May 1, 2020); *United States v. Fuentes*, 2020 WL 1937398 (E.D. Ca. Apr. 22, 2020). What Cain has presented simply is not an extraordinary and compelling reason for a reduction in his sentence.

### 3. *COVID-19 and the Bureau of Prisons*

His motion also identifies factors that make prison facilities susceptible to transmission of COVID-19. While these are true, BOP is making every effort to combat the spread of this infectious disease. And, although BOP facilities have experienced significant transmission of the disease through inmate populations, BOP has taken a substantial number of steps to prevent its spread and followed the guidance from the CDC and other health experts, altering practices as that guidance has changed throughout the pandemic.

First, the record demonstrates that BOP is using it legal authorities under 18 U.S.C. § 3624(c)(2) and 34 U.S.C. § 60541(g), and Section 12003(b)(2) of the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"), Pub. L. No. 116-136 to reduce the number of inmates vulnerable to COVID-19 in his care. As of August 10, 2020, some 7,405 inmates have been transferred to home detention.

Second, throughout the pandemic, BOP has been actively attempting to protect the health of inmates and staff, adjusting continually to the changing guidance from health experts. The measures it has taken since March include screening incoming inmates; regular screening of staff; limiting contractor visits to essential services; suspending attorney, social, and volunteer visits; limiting inmate movements between facilities; and taking additional steps to modify operations to maximize social distancing such as staggering times for meals and recreation.  It

has ensured that cleaning and sanitation supplies are available and when it became clear that masks would help halt the spread of this disease, masks were supplied to inmates and staff. The BOP also increased testing, locked down facilities to halt any spread, and continues to quarantine inmates entering its facilities. The Director of BOP testified regarding these efforts before the Senate Judiciary Committee on June 2, 2020.  All of these measures reduce the risk to the defendant while incarcerated.

Cain is currently serving his sentence at USP Leavenworth which has suffered an outbreak of COVID-19. According to the BOP website, as of August 10, 2020, of the 1583 inmates at the facility, 1 has tested positive for the disease and 3 staff members currently have tested positive.  In addition some 200 additional inmates at this institution have tested negative.

In any event, release into the community does not guarantee that Cain will be at lesser risk for contracting COVID-19, given the substantial spread of the virus throughout the United States. Therefore, acknowledging that COVID 19 presents a health risk to everyone, including incarcerated individuals, there is no basis for concluding that Robertson faces a significantly greater risk while in custody than what he would face in the community upon his release.

### 4.  *The § 3553(a) Factors Don't Support the Defendant's Release and the Defendant Has Failed to Establish He is No Longer a Danger.*

As noted above, Cain has not presented "extraordinary and compelling" reasons to reduce his sentence. That fact precludes a reduction in his sentence. Cain seeks to avoid that result by pointing to the length of the state court sentence that he was required to serve before beginning his federal sentence and suggesting that he is ready to transition to life

outside of the institution. But whether that is true or not is beside the point. As Congress noted when it directed the Sentencing Commission to draft the policy statement referenced in the statute, rehabilitation alone is not an extraordinary and compelling reason. Simply put, a motion for reduction in sentence cannot be based on rehabilitation alone. *See* 28 U.S.C. § 994(t).

Moreover, at his sentencing, despite granting a downward departure, Judge Franklin D. Burgess chose to impose the ten-year sentence Cain is now serving consecutive to his lengthy state court sentence for a separate series of armed robberies. Cain's conduct was violent and dangerous and that fact is reflected in the sentence imposed by the Court. Cain has now served approximately one-year of his federal sentence. While a lesser sentence might well be imposed today, that is not a basis for a reduction in his sentence pursuant to § 3582(c)(1)(A). The statute only allows for a reduction in sentence based on an extraordinary and compelling reason. It is not a tool for sentence correction. The fact that Cain has already spent a lengthy period in state custody simply does not constitute such a reason.

### III. CONCLUSION

For all of the above reasons, Cain's Motion for Compassionate Release is **DENIED**.

Dated this 11th day of August, 2020.

Ronald B. Leighton
United States District Judge